Battle, J.
 

 The second count of the plaintiff’s declaration was for a breach of the contract, alledged to have been made by the defendants, to take good care of certain slaves, whom they had hired, and to furnish them with good accommodations. And the third was for a breach of the implied contract, arising from the bailment, to take ordinary care of the slaves. Upon the testimony given on the part of the plaintiff, in support of these counts, the presiding J udge held that, taking it to be all true, it did not prove a breach of either of them, and that, therefore, the plaintiff could not recover upon either of them. The opinion of his Honor, expressed thus generally, in relation to the testimony given by all the witnesses who were examined for the plaintiff, cannot be sustained, if any one or more of them testified to a statement of facts, which in law, made put a case of a neglect of the defendants to take good care^£, and furnish good accommodations to the slaves in question, as applicable to the second count; or of a want of ordinary care, as applicable to the third count.
 

 A critical examination of the statements of each of the witnesses who testified as to the kind and condition of the lints or shanties in which the slaves were lodged at the time when they were injured, has brought us to the conclusion that at least two, if not more of them, prove a breach ef both the counts. The only case relied on by the counsel, for the defendants, in support of his Honor’s opinion, is that of
 
 Slocumb
 
 
 *254
 
 v. Washington, 6 Jones’ Rep. 357. A reference to the questions discussed and decided in that case will show that, if it does not actually oppose, it at least yields no support to the proposition for which it is cited. In the course of the trial in that case, the second count of the declaration, which was for want of proper care in keeping and providing for certain slaves hired to work on a railroad-, the defendants offered to prove “ that the nature of the railroad work kept the hands but a short time at any one place; that the shanty assigned to the hands at the place in question, was as good as those usually erected for the business,” which testimony was rejected by the presiding Judge. This Court held that the testimony ought to have been admitted, giving therefor the following reasons. “The defendants were bound to ordinary care, that is, such care as prudent men, generally, under the same circumstances, and engaged in the same business, take of their own slaves. Hence, it became material in this case, to show what was the degree of care generally practiced by the persons engaged in making railroad embankments and excavations, in respect to the lodging of their own slaves, employed in the work. Eor, certainly, one who hires himself or his slave to serve in a particular employment, must be supposed to understand the usages and ordinary risks in that employment, and to contract in reference to them.” In the case now before us, the witnesses were permitted to describe the kind and condition of the huts or shanties, in which the plaintiff’s slaves were lodged, and each one who speaks on that subject says they were inferior to those ordinarily provided for slave laborers on railroads. Mr.
 
 Raiford
 
 says that the accomodation for the railroad hands, “were nothing like as good as are ordinarily used on works of the kind, and were nothing like as good as an ordinary horse stable.” Mr.
 
 Hobmson
 
 says that those he saw at the Heritage place, “ lacked a great deal of being as good as ordinary — they would be very poor horse stables.” He said further, that they did not look to be as good as those he had seen on the North Carolina railroad. Mr.
 
 Loftin
 
 states that “he never saw any shanties any where else, as
 
 *255
 
 poor (.sorry) as those at the Heritage place — that the latter were Dot as good as an ordinary horse stable.” On cross examination he said that the shanties did not deserve the name. It is stated in the bill of exceptions, that none of the witnesses knew whether the slaves in question had remained at the shanties during the snow, or the time when they had left the employment of the defendant, nor which of the shanties they occnpied, except from the conversation between Eaiford and Parrott. In these respects, this case differs materially from that of
 
 Slocumb
 
 v.
 
 Washington,
 
 above referred to, in which it appeared, affirmatively, that the plaintiff’s slaves were frost bitten and injured, not by remaining in their hut, where other slaves were proved to have remained during the snow storm, and thereby kept themselves unharmed, “ but on their journey to their master’s in another county, undertaken and performed without the direction of the defendants and against the orders of the manager.” In this case
 
 ~W.
 
 O. Loftin stated that he had four hands in the. defendants employment who stayed at these shanties during the snow, and that two of them were frost bitten, though he had heard that one of these two had fallen into a ditch, and remained there some time.
 

 The result of our examination of the testimony is, that the lodging of the plaintiff’s slaves in any of the shanties, describ ed by the witnesses, was not the taking such care of them as a man of ordinary prudence would take of his own slaves employed in similar business, much less, was it the taking good care of them and furnishing them with good accommodations. For the error committed by his Honor, in his instructions, in relation to the second and third counts, there must be a reversal of the judgment, and the grant of a
 
 venire ele
 
 novo, and this renders it unnecessary for us to notice, particularly, the other points made in the case. The reversal of the judgment in the plaintiff’s favor, on the fourth count, follows, necessarily, from the grant of a new trial to him on the second and third;
 

 Per Curiam,
 

 Judgment reversed, and a
 
 venire de novo.